IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| **JOSEPH DRAEGO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:20-cv-37 |
| | ) | |
| **RASHALL M. BRACKNEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT PLATANIA'S MOTION TO DISMISS**

During its 2020 Session, the General Assembly of the Commonwealth of Virginia passed legislation creating procedures for obtaining substantial risk orders. That legislation provided for both temporary emergency orders and subsequent longer-term orders, which allow the seizure of a person's firearms upon a showing that he "poses a substantial risk of personal injury to himself or to other individuals in the near future by such person's possession or acquisition of a firearm." Va. Code §§ 19.2-152.13(A), 19.2-152.14(A). Currently, 18 other States and the District of Columbia have similar substantial risk laws to keep firearms out of the hands of mentally ill, suicidal, and violent individuals.

Plaintiff Joseph Draego ("Plaintiff") claims that he fears that Defendant Joseph D. Plantania ("Defendant") will petition for an order pursuant to these procedures, which took effect on July 1, 2020, to seize his firearms. But Plaintiff identifies not even a single fact from which the Court might conclude that such a petition—much less the issuance of an order of removal—is impending, imminent, likely, or even a remote possibility. The Complaint, therefore, fails to invoke the Court's subject matter jurisdiction because it establishes neither Plaintiff's standing to bring these claims, nor their ripeness for adjudication by the Court.

1

Simply put, Plaintiff "disagree[s] with a state statute and desire[s] a federal court to declare it unconstitutional." *Doe v. Duling*, 782 F.2d 1202, 1207 (4th Cir. 1986). "To adjudge [such a] fanciful dispute would undermine the proper role of federal courts in our system of government and usurp the position of state courts and legislatures as primary arbiters of state law." *Id.* at 1204. The Complaint, therefore, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]

## PROVISIONS OF VIRGINIA'S SUBSTANTIAL RISK LEGISLATION

Virginia Code § 19.2-152.13, *et seq*. codifies the standards and procedures for issuing a substantial risk order. It first provides for the issuance of an emergency, ex parte, substantial risk order, which removes firearms from a respondent's possession for a maximum of 14 days. Va. Code § 19.2-152.13. Second, the statute provides for a longer-duration, renewable, order of up to 180 days issued after a circuit court hearing. Va. Code § 19.2-152.14.

Specifically, after an "independent investigation has been conducted by law enforcement that determines that grounds for the petition exist," an attorney for the Commonwealth or a law enforcement officer may petition a magistrate or a circuit, general district, or juvenile and domestic relations court judge for the issuance of an initial "emergency" substantial risk order. Va. Code § 19.2-152.13(A). The initial, ex parte, emergency order may be issued "upon a finding that there is probable cause to believe that a person poses a substantial risk of personal injury to himself or others in the near future by such person's possession or acquisition of a firearm." Va. Code § 19.2-152.13(A).

---

[1] Because Plaintiff has utterly failed to invoke this Court's jurisdiction, this Motion does not concern the substance of Plaintiff's claims. However, Defendant does not concede these claims have any merit and reserves the right to pursue future motions to dismiss on such grounds, if appropriate.

If a judge or magistrate issues the emergency order, the effect is to "prohibit the person who is subject to the order from purchasing, possessing, or transporting a firearm for the duration of the order." Va. Code § 19.2-152.13(A). Once served with the order, the person bound thereby is "given the opportunity to voluntarily relinquish any firearm in his possession," or law enforcement may secure a warrant, separate from the order, to seize it. Va. Code § 19.2-152.13(C). This initial ex parte order expires after 14 days. Va. Code § 19.2-152.13(D).

No later than 14 days after the issuance of the initial emergency order, a circuit court must hold a hearing to decide whether a longer-term substantial risk order shall be entered. Va. Code § 19.2-152.14(A). At this hearing, the Commonwealth bears the burden of proving "by clear and convincing evidence that the person poses a substantial risk of personal injury to himself or to other individuals in the near future by such person's possession or acquisition of a firearm." Va. Code § 19.2-152.14(A). By contrast, if, at any point during the hearing process, "the court finds that the person does not pose a substantial risk of personal injury to himself or to other individuals in the near future, the court shall order that any firearm that was previously relinquished be returned to such person in accordance with the provisions of § 19.2-152.15." Va. Code § 19.2-152.14(B).

"In determining whether clear and convincing evidence for the issuance of an order exists, the judge shall consider any relevant evidence including any recent act of violence, force, or threat as defined in § 19.2-152.7:1 by such person directed toward another person or toward himself."[2] Va. Code § 19.2-152.14(A). The Code makes clear that a substantial risk hearing is a

---

[2] Code § 19.2-152.7:1 defines "Act of violence, force, or threat" as "any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury. Such act includes, but is not limited to, any forceful detention, stalking, criminal sexual assault in violation of Article 7 (§ 18.2-61 et seq.) of Chapter

3

"separate civil legal proceeding subject to the same rules as civil proceedings." Va. Code § 19.2-152.13(I).

Once entered, the order "prohibit[s] the person who is subject to the order from purchasing, possessing, or transporting a firearm for the duration of the order." Va. Code § 19.2-152.14(A). The order must specify its period of duration, up to 180 days. Va. Code § 19.2-152.14(C). The order may be extended, again for up to 180 days, if, in a subsequent circuit court hearing prior to the expiration of the order, the Commonwealth demonstrates "clear and convincing evidence that the person continues to pose a substantial risk of personal injury to himself or to other individuals in the near future by such person's possession or acquisition of a firearm at the time the request for an extension is made." Va. Code § 19.2-152.14(C).

To enforce the provisions of a substantial risk order, the General Assembly created a new Class 1 misdemeanor, prohibiting "any person who is subject to an emergency substantial risk order or a substantial risk order entered pursuant to § 19.2-152.13 or 19.2-152.14 or an order issued by a tribunal of another state, the United States or any of its territories, possessions, or commonwealths, or the District of Columbia pursuant to a statute that is substantially similar to § 19.2-152.13 or 19.2-152.14 to purchase, possess, or transport any firearm while the order is in effect."[3] Va. Code § 18.2-308.1:6.

Beyond the burden of proof and the standard of proof at the contested circuit court hearing, and the requirement of an independent police investigation, the statute provides additional procedural safeguards. First, the Code provides a formalized procedure to challenge

---

4 of Title 18.2, or any criminal offense that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury."

[3] The General Assembly likewise amended Code § 18.2-308.2:1 to make it a crime to sell, barter, give, or furnish a firearm to a person known to be prohibited from possessing a firearm pursuant to Code § 18.2-308.1:6.

4

the substantial risk order after its entry. No sooner than 30 days from the date of issuance of the order, "[t]he person who is subject to the order may file a motion to dissolve the order one time during the duration of the order." Va. Code § 19.2-152.14(C). Second, to prevent false accusations, the General Assembly made it a Class 1 misdemeanor for a person "who knowingly and willfully makes any materially false statement or representation to a law-enforcement officer or attorney for the Commonwealth who is in the course of conducting an investigation undertaken pursuant to this chapter." Va. Code § 19.2-152.16.

## ALLEGED FACTS AND PROCEDURAL HISTORY

The Complaint was filed on July 2, 2020, the day after the substantial risk order legislation took effect. ECF No. 1. Plaintiff alleges he has "frequently voiced opinions viewed as controversial by the Charlottesville community," specifically that he has "attended various protests advocating against the removal of a statute of General Robert E. Lee" and spoke at a Charlottesville City Council meeting in 2016 "opposing unchecked Muslim immigration." ECF No. 1 ¶ 9. As a result, he has become "widely associated with such viewpoints." *Id.* Plaintiff further alleges that "[a]ctivists" have "posted flyers" identifying Plaintiff as a "local Nazi" and stating that he "spew[s] anti-Muslim hate speech" and "is a close associate of Jason Kessler." *Id.* Activists—private individuals who are not parties to this action—also made statements on Facebook in 2018 concerning Plaintiff's possession of firearms. *Id.* Plaintiff has owned firearms for "15 years and possesses a concealed handgun permit." ECF No. 1 ¶ 6.

Notably, the Complaint alleges no facts regarding the activities of Defendant or any other public official. Plaintiff does not allege that Defendant has petitioned a magistrate or judge for an order pursuant to the substantial risk law regarding Plaintiff's possession of firearms. Plaintiff does not allege that Defendant—or any other person—has threatened to pursue such an

order.  Plaintiff claims that he "plans to refrain from engaging in lawful expressive activity to avoid losing his ability to possess firearms," ECF No. 1 ¶ 17, but Plaintiff does not further specify precisely what "expressive activity" in which he is voluntarily ceasing to engage. Finally, nowhere in the Complaint does Plaintiff allege even a subjective belief that a judge or magistrate will imminently issue an order at the request of Defendant or any other official pursuant to the substantial risk law.

In the Complaint, Plaintiff advances five causes of action against Defendant, all concerning the substantial risk order legislation.  First, Plaintiff contends that Va. Code §§ 19.2-152.13 through 19.2-152.17 are "constitutionally invalid as overbroad in violation of the First Amendment" because the Code authorizes consideration of "any relevant evidence" to determine whether a substantial risk order should be issued, to include speech. ECF No.1 ¶¶ 15, 18.  As a result, Plaintiff alleges he "plans to refrain from engaging in lawful expressive activity to avoid losing his ability to possess firearms." ECF No.1 ¶ 17.  Second, Plaintiff claims Va. Code §§ 19.2-152.13 through 19.2-152.17 "infringe upon [his] right to keep and bear arms under the Second Amendment," and that he "is both refraining from carrying a firearm . . . and purchasing additional lawful firearms out of fear they will be confiscated." ECF No. 1 ¶¶ 22-23. Third, Plaintiff claims that Va. Code §§ 19.2-152.13 through 19.2-152.17 violate due process under the Fourteenth Amendment because the Code allows for consideration of "any relevant evidence."  ECF No. 1 ¶¶ 22-23.  In his fourth cause of action, Plaintiff claims Va. Code § 19.2-152.13, the emergency provision, violates the Sixth Amendment because he would not be afforded "the right to a trial, the right to confront witnesses against him, or the right to counsel." ECF No. 1 ¶¶ 25-26.  Finally, Plaintiff claims the same Code section violates the Seventh Amendment because it "allows the Commonwealth to confiscate [his] firearms without affording

him the right to a trial by a jury of his peers." ECF No. 1 ¶¶ 29-30. Plaintiff seeks to enjoin Defendant from seeking either an emergency substantial risk order or substantial risk order, or from in any way enforcing the provisions of Code §§ 19.2-152.13 through 19.2-152.17.

## LEGAL STANDARD

Plaintiff fails to allege sufficient facts to establish his standing to bring his current claims or their ripeness for adjudication. A challenge to the plaintiff's standing is a threshold jurisdictional question to be addressed under Rule 12(b)(1). *See Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003). Similarly, "[r]ipeness is a question of subject matter jurisdiction" and thus evaluated under the same standard. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013) (citation omitted).

"The party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of constitutional standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation and internal quotation marks omitted). Similarly, "the party bringing the suit bears the burden of proving ripeness." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013).

"Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for lack of subject matter jurisdiction." *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 782 (E.D. Va. 2003). A district court should grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Upstate Foreover v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quotation omitted).

7

## LAW AND ARGUMENT

**I.      Plaintiff Fails to Establish His Standing to Bring His Claims.**

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Article III of the United States Constitution limits the judicial power of the federal courts to considering "Cases" and "Controversies."  U.S. Const. art. III, § 2 cl. 1.  The "case" or "controversy" requirement "ensures the presence of the 'concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The Constitution, therefore "restricts [federal courts] . . . to redress[ing] and prevent[ing] actual or imminently threatened injury to persons caused by private or official violations of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  The standing doctrine is rooted in the case or controversy requirement.  *Spokeo*, 136 S. Ct. at 1547.  "The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood.  The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*

The Supreme Court has concluded that the "'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To establish constitutional standing at the

pleading stage, a plaintiff must allege sufficient facts in the complaint to establish each of these elements. *Id.*

Plaintiff has failed to establish any of the three elements required by constitutional standing. As such, this Court should dismiss his case for lack of subject matter jurisdiction.

### a. Plaintiff Has Not Suffered an Injury in Fact.

"[I]njury in fact [is] the 'first and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). The injury-in-fact requirement "assure[s] that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986)). To establish that a plaintiff has standing, the alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560).

"Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2). *Accord Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2015). Where a claim relies on the potential of an injury occurring in the future, therefore, the Supreme Court has "repeatedly reiterated that the 'threatened injury must be *certainly impending* to constitute injury in fact,' and that 'allegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Moreover, 'an alleged harm is too 'speculative' to support

Article III standing when the harm lies at the end of a 'highly attenuated chain of possibilities.'" *South Carolina v. United States*, 912 F.3d 720, 727 (4th Cir. 2019) (quoting *Clapper*, 568 U.S. at 410). Finally, "a plaintiff seeking prospective injunctive relief may not rely on prior harm to establish Article III standing." *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (internal quotation omitted).

Each of Plaintiff's causes of action lacks any minimal showing of a certain, imminent injury. The Supreme Court's decision in *Clapper* is particularly instructive. There, attorneys, media figures, and others challenged the procedures for the collection of information involving non-United States persons under § 702 the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1881a ("FISA"). Plaintiffs could point to no proceedings, or even a credible threat of proceedings, pursuant to FISA that might result in the collection of their information; instead, the plaintiffs relied on their decisions to modify their behavior in light of the mere possibility that their data might be collected in an effort to establish standing to challenge the law. *Clapper*, 568 U.S. at 406-07.

The Supreme Court held that the plaintiffs' "theory of standing, which relies on a highly attenuated chain of possibilities, d[id] not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. The Court emphasized that because the statute merely authorized—rather than mandated—the government to engage in surveillance, the plaintiffs' claim that they would be surveilled was "necessarily conjectural." *Id.* at 412. An additional contingency on which the plaintiffs' claim relied was the assumption that a third-party decision maker—the Foreign Intelligence Surveillance Court—would authorize a warrant for surveillance of the plaintiffs or their associates. *Id.* at 413-14. The Supreme Court declined "to

abandon our usual reluctance to endorse standing theories that rest on speculation and the decisions of independent actors." *Id.* at 414.

In this case, Plaintiff has pled no facts that would allow this Court to conclude that there was any likelihood whatsoever that Defendant would seek a substantial risk order for Plaintiff's firearms. Indeed, Plaintiff makes no allegations of any action by Defendant. To conclude Plaintiff has established injury for standing would require this Court to speculate that Defendant would seek to petition for a substantial risk order against Plaintiff; that the required independent law enforcement investigation would endorse this course of action; that the Defendant would then go to one of the listed judicial officials to seek the order; and that the judge would find Defendant had made a sufficient showing and issue the order. This is exactly the "highly attenuated chain of possibilities," *Clapper*, 568 U.S. at 410, the Supreme Court held could not establish constitutional standing, and this Court should have the same "reluctance" "to endorse [a] standing theor[y] that rest[s] on speculation and the decisions of independent actors."[4] *Id.* at 414.

Furthermore, this requirement of demonstrating imminent and certain injury is not satisfied by Plaintiff's statement that he intends to curtail his speech or refrain from carrying his firearm. The Fourth Circuit has adopted a particularly nuanced approach to analyzing injury required for standing when a plaintiff seeks to enjoin government policies alleged to encroach upon a constitutional interest. *Abbott*, 900 F.3d at 176. *Accord Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018). "First, [a plaintiff] may show that they intend to engage in conduct at least arguably protected by the First Amendment but also proscribed by the policy they wish to

---

[4] This is particularly true for Plaintiff's third, fourth, and fifth causes of action, which allege constitutional deficiencies of the emergency and longer-term substantial risk order procedures, to which Plaintiff has neither been subjected nor demonstrated an imminent likelihood that he will be.

11

challenge, and that there is a 'credible threat' that the policy will be enforced against them when they do so." *Abbott*, 900 F.3d at 176 (citation omitted). "Second, they may refrain from exposing themselves to sanctions under the policy, instead making a sufficient showing of 'self-censorship'—establishing, that is, a 'chilling effect' on their free expression that is 'objectively reasonable.'" *Id.* (quoting *Cooksey v. Futrell*, 721 F.3d 226, 235-36 (4th Cir. 2013)).

As concerns First Amendment rights specifically, the ability to show a credible threat of enforcement is critical for standing to be established based on a pleading of a chilling effect. "Subjective or speculative accounts of such a chilling effect . . . are not sufficient. Any chilling effect must be objectively reasonable." *Cooksey*, 721 F.3d at 236. Without a credible likelihood of enforcement, "a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an objectively good reason for refraining from speaking and 'self-censoring' instead." *Abbott*, 900 F.3d at 176.

For this reason, Plaintiff's allegations in causes of action one and two are likewise insufficient to establish injury required for standing. Plaintiff pleads in causes of action one and two that he "plans to refrain from engaging in lawful expressive activity to avoid losing his ability to possess firearms," ECF No. 1 ¶ 17, and "is both refraining from carrying a firearm . . . and purchasing additional lawful firearms out of fear they will be confiscated," ECF No. 1 ¶¶ 22-23. However, neither of these actions—even on the face of the Complaint—are objectively reasonable such that they establish injury. *See Abbott*, 900 F.3d at 176. The Complaint alleges no facts from which "a person of ordinary firmness" would conclude that he faces imminent restriction by a substantial risk order should he exercise his constitutional rights. *Cooksey*, 721 F.3d at 236. Plaintiff cannot manufacture standing by inflicting harm on himself, that is, by

self-censoring his exercise of his constitutional rights when it is not objectively reasonable to believe he would be subjected to the process outlined in the substantial risk legislation. *See Clapper*, 568 U.S. at 416 ("Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending.  In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts . . . do not render advisory opinions.'" *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (quoting *United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947)).

Finally, any allegations by Plaintiff that he had previously been subjected to negative consequences because of his beliefs, conduct, and speech cannot establish imminence of injury required for standing. The Fourth Circuit's decision in *Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018), is particularly instructive.  In that case, students at the University of South Carolina brought a First Amendment challenge to the school's anti-harassment policy, arguing that its prohibitions on speech were "overly broad and too vague to be capable of precise definition or application." *Abbott*, 900 F.3d at 166-67.  In attempting to state their facial challenge, the students relied chiefly on a single prior incident in which they had been investigated under the policy.  The Fourth Circuit rejected that argument, holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 176 (internal quotation omitted).  The Court emphasized that the plaintiffs' argument regarding past wrongs was particularly weak because they could point to no evidence that they had faced prior sanctions

under the policy. *Id.* at 176-77. Moreover, the Court acknowledged that other individuals might find certain forms of speech offensive and report it for investigation under the harassment policy, but found that fact "does not by itself translate into a credible threat that the University would sanction the plaintiffs for engaging in protected speech in the future simply because others found it offensive." *Id.* at 177.

Here, Plaintiff claims to have faced certain repercussions in the past for having engaged in "controversial" speech, ECF No. 1 ¶ 9, but none of those incidents involved Defendant or any other public officials. As the Fourth Circuit observed in *Abbott*, it "does not by itself translate into a credible threat that [a public official] would sanction [Plaintiff] for engaging in protected speech in the future simply because others found it offensive." *Abbott*, 900 F.3d at 177. Moreover, the most recent incident Plaintiff identifies in the Complaint occurred in February 2018. ECF No. 1 ¶ 9. Plaintiff simply cannot rely solely on incidents that occurred more than two years ago in attempting to show that he faces "certainly impending" harm here. *Clapper*, 568 U.S. at 409.

In sum, Plaintiff has failed to meet the minimum constitutional requirement to show certain, imminent injury, and his complaint should be dismissed for lack of subject matter jurisdiction.

### b. Plaintiff's Alleged Injuries Are Not Fairly Traceable to Defendant's Conduct.

In addition to demonstrating that he has suffered an injury in fact, Plaintiff must also show that the alleged harm "is fairly traceable to the challenged conduct of the defendant" and that the harm "is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "Traceability is established if it is 'likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court.'" *Doe*

*v. Va. Dep't of State Police*, 713 F.3d at 755 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)). "The traceability and redressability prongs become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured. An injury . . . must result from the actions of the respondent, not from the actions of a third party beyond the Court's control.'" *Id.* (quoting *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009)).

The injury Plaintiff alleges is not fairly traceable to Defendant. Indeed, Plaintiff has not alleged *any* action by Defendant or other public official. Rather, Plaintiff ties his fear that he will be subject to the provisions of a substantial risk order to the actions of "activists." But, unlike some other States with substantial risk order legislation, Virginia law does not permit individuals outside of law enforcement to petition for such an order. *Compare* Cal. Penal Code § 18150 (effective Sept. 1, 2020) (permitting "[a]n immediate family member," "[a]n employer," "[a] coworker," "[a]n employee or teacher of a secondary or postsecondary school," or "[a] law enforcement officer" to petition for a substantial risk order). To the extent, therefore, that Plaintiff has self-censored his exercise of any constitutional rights, that injury is traceable to these non-party "activists" and not to Defendant.

Furthermore, as outlined in Va. Code § 19.2-152.13, no emergency substantial risk order may issue against any person absent a finding of probable cause by a magistrate or a judge of a general district, juvenile and domestic relations, or circuit court. The actions of this independent actor break the causal chain between any possible action of Defendant and the alleged constitutional injury Plaintiff claims he might sustain. *See Evans v. Chalmers*, 703 F.3d 636, 647 (2012).

Thus, Plaintiff has failed to establish traceability of any alleged injury to actions by Defendant, and for this reason he has likewise failed to prove standing in this matter.

### c. Plaintiff has not shown action by this Court would redress any alleged injury.

Finally, to establish constitutional standing to bring his claims, Plaintiff must have alleged sufficient facts to show that the injury he suffered "is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d at 755 (quoting *Friends of the Earth*, 528 U.S. at 181). "'An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the Court's control.'" *Id.* (quoting *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009)).

The Complaint fails to establish that Plaintiff has sustained an injury-in-fact which is traceable to Defendant. Accordingly, Plaintiff also fails to show that he has sustained an injury that "is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. Moreover, Plaintiff's theory of standing relies on assumptions about the actions of certain non-parties—including "activists," ECF No. 1 ¶ 9, and judicial officers—to whom the injunction Plaintiff requests as relief will not apply. Because Plaintiff has not and cannot bring these independent actors into this action, the Complaint fails to demonstrate that Plaintiff's alleged injury can be redressed by the Court.

Overall then, Plaintiff has failed, in the Complaint, to establish a certain, imminent injury which is traceable to Defendant and which could be redressed by this Court. As such, the Complaint should be dismissed for the absence of subject matter jurisdiction in this Court.

## II.     Plaintiff's Claims Are Not Ripe for Adjudication.

In addition to failing to demonstrate that he has standing, Plaintiff also fails to establish that his claims are ripe for adjudication. "Ripeness concerns the appropriate timing of judicial intervention." *Cooksey*, 721 F.3d at 240 (internal quotation omitted). "Like standing, the ripeness doctrine 'originates in the case or controversy requirement of Article III.'" *South Carolina v. United States*, 912 F.3d at 730 (quoting *Scroggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013)). "Although the phrasing makes the question of who may sue and when they sue seem distinct, in practice there is an obvious overlap between the doctrines of standing and ripeness.'" *Id.* (quoting *Miller*, 462 F.3d at 319).

"In determining ripeness, 'we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration. A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties.'" *Doe v. Va. Dep't of State Police*, 713 F.3d at 758 (quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)). The ripeness doctrine prevents federal courts "from considering a controversy until it is presented in 'clean-cut and concrete form.'" *Id.* (quoting *Rescue Army v. Mun. Ct. of Los Angeles*, 331 U.S. 549, 584 (1947)). "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Id.* (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)).

None of Plaintiff's claims in this case are ripe for adjudication. Plaintiff is not currently subject to a substantial risk order. Furthermore, Plaintiff alleges no facts that would tend to show any likelihood that any person—much less Defendant—will imminently or at any time petition for a substantial risk order against him. "[A] plaintiff's claim is not ripe for judicial review 'if it

rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *South Carolina*, 912 F.3d at 730 (citation omitted).  Plaintiff has provided no reason to believe that he will *ever* be subject to a substantial risk order.

Moreover, Plaintiff will experience no objectively reasonable hardship should the Court decline to intervene at this juncture.  "The hardship prong of our ripeness analysis is 'measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law.'"  *Doe v. Va. Dep't of State Police*, 713 F.3d at 759.  Having failed to establish that he imminently faces proceedings for a substantial risk order, Plaintiff has not shown any immediate threat to his constitutional rights necessitating that the Court act.  And although Plaintiff claims that he "plans to refrain from engaging in lawful expressive activity," ECF No. 1 ¶ 17—and that he is "refraining from carrying a firearm," ECF No. 1 ¶ 22—the Complaint contains no allegation about specific instances in which Plaintiff has foregone protected constitutional conduct.  Beyond the vaguest of claimed injuries, therefore, Plaintiff has given the Court no facts with which to weigh any alleged constitutional burden that the substantial risk legislation might impose.  Plaintiff, therefore, has failed to demonstrate that his claims are ripe for adjudication.

## CONCLUSION

This Court lacks subject matter jurisdiction to adjudicate any claim made by Plaintiff. There are no facts from which this Court could conclude that Plaintiff faces a certain, imminent injury, traceable to Defendant and redressable by the Court, which is ripe for review and resolution. For these reasons, Defendant's motion to dismiss should be granted and the case dismissed.

                                Respectfully submitted,

                                */s/*_____
                                A. Anne Lloyd (VSB No. 79105)
                                Assistant Attorney General
                                Blaire Hawkins O'Brien (VSB No. 83961)
                                Assistant Attorney General
                                Office of the Attorney General
                                202 North 9th Street
                                Richmond, Virginia 23219
                                Telephone: (804) 786-5315
                                Telephone: (804) 371-0977
                                Facsimile: (804) 371-2087
                                Email: alloyd@oag.state.va.us
                                Email: bo'brien@oag.state.va.us

                                *Counsel for Defendant Joseph D. Platania*

Mark R. Herring
Attorney General of Virginia

Victoria N. Pearson
Samuel T. Towell
Deputy Attorneys General

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2020, copies of the foregoing were served on the *pro se* party of record, via UPS, at the address listed below, and were sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Joseph Draego
730 Montei Drive
Earlysville, VA 22936

Respectfully submitted,

/s/ _____
A. Anne Lloyd (VSB No. 79105)
Assistant Attorney General
Blaire Hawkins O'Brien (VSB No. 83961)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-5315
Telephone: (804) 371-0977
Facsimile: (804) 371-2087
Email: alloyd@oag.state.va.us
Email: bo'brien@oag.state.va.us

*Counsel for Defendant Joseph D. Platania*