IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JOSEPH DRAEGO,                           )
                                         )      Civil Action No. 3:20CV00037
            Plaintiff,                   )
                                         )      **MEMORANDUM OPINION**
v.                                       )
                                         )      By: Hon. Glen E. Conrad
RASHALL M. BRACKNEY, et al.,             )      Senior United States District Judge
                                         )
            Defendants.                  )

During its 2020 Session, the General Assembly of the Commonwealth of Virginia enacted legislation that allows an attorney for the Commonwealth or a law enforcement officer to petition for an "emergency substantial risk order" that temporarily restricts a person's access to firearms.  Va. Code Ann. § 19.2-152.13(A) (2020).  The issuance of such order, or a subsequent order of longer duration, requires a finding that the person poses a substantial risk of personal injury to himself or others in the near future by possessing or acquiring a firearm.  Id.; see also id. § 19.2-152.14(A).  The day after the legislation took effect, Joseph Draego, a pro se plaintiff, filed this action under 42 U.S.C. § 1983 challenging its constitutionality.  The complaint names as defendants RaShall M. Brackney, Chief of Police for the City of Charlottesville, and Joseph D. Platania, Commonwealth's Attorney for the City of Charlottesville.  The defendants have moved to dismiss the complaint on multiple grounds, including lack of standing.  For the following reasons, the court will grant the defendants' motions.

**Statutory Background**

Before delving into the facts alleged in the complaint, the court will summarize the challenged legislation.

The standards and procedures applicable to the issuance of substantial risk orders are set forth in Chapter 9.2 of Title 19.2 of the Code Virginia.  <u>See</u> Va. Code Ann. §§ 19.2-152.13 through 19.2-151.17 (2020).  The new Code provisions initially allow for the issuance of an emergency ex parte order that prohibits the respondent from possessing firearms for a maximum of fourteen days.  <u>Id.</u> § 19.2-152.13.  Following the issuance of that initial order and the conduct of a hearing, a circuit court may enter an order of longer duration.  <u>Id.</u> § 19.2-152.14.

The initial emergency order may be petitioned for by "an attorney for the Commonwealth or a law-enforcement officer" if "an independent investigation has been conducted by law enforcement that determines that grounds for the petition exist."  <u>Id.</u> § 19.2-152.13(A).  The order may be issued by "a judge of a circuit court, general district court, or juvenile and domestic relations district court or a magistrate, upon a finding that there is probable cause to believe that a person poses a substantial risk of personal injury to himself or others in the near future by such person's possession or acquisition of a firearm."  <u>Id.</u>  The petition for an emergency order must be made under oath and supported by an affidavit.  <u>Id.</u> § 19.2-152.13(B).  "In determining whether probable cause for the issuance of an order exists, the judge or magistrate shall consider any relevant evidence, including any recent act of violence, force, or threat as defined in § 19.2-152.7:1[1] by such person directed toward another person or toward himself."  <u>Id.</u> § 19.2-152.13(A).

---

[1] An "[a]ct of violence, force, or threat" is defined as "any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury."  Va. Code Ann. § 19.2-152.7:1.  "Such act includes, but is not limited to, any forceful detention, stalking, criminal sexual assault in violation of Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2, or any criminal offense that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury."  <u>Id.</u>

If a judge or magistrate issues an emergency order, "[s]uch order shall prohibit the person who is subject to the order from purchasing, possessing, or transporting a firearm for the duration of the order." Id. Upon service of the emergency order, the person who is subject to the order must be given the opportunity to voluntarily relinquish any firearm in his possession. Id. § 19.2-152.13(C). The emergency order expires "at 11:59 p.m. on the fourteenth day following issuance of the order." Id. § 19.2-152.13(D). "The person who is subject to the order may at any time file with the circuit court a motion to dissolve the order." Id.

No later than fourteen days after the issuance of an emergency order, the circuit court for the jurisdiction where the order was issued must hold a hearing to determine whether a substantial risk order of longer duration should be entered. Id. § 19.2-152.14(A). At the hearing, the Commonwealth bears the burden of proving all material facts by clear and convincing evidence. Id. "If the court finds by clear and convincing evidence that the person poses a substantial risk of personal injury to himself or to other individuals in the near future by such person's possession or acquisition of a firearm," the court must issue a substantial risk order. Id. If, on the other hand, "the court finds that the person does not pose a substantial risk of personal injury to himself or to other individuals in the near future, the court shall order that any firearm that was previously relinquished be returned to such person in accordance with the provisions of § 19.2-152.15." Id. § 19.2-152.14(B). In determining whether clear and convincing evidence for the issuance of an order exists, the court must "consider any relevant evidence including any recent act of violence, force, or threat as defined in § 19.2-152.7:1 by such person directed toward another person or toward himself." Id. § 19.2-152.14(A).

If the circuit court issues a substantial risk order, "[s]uch order shall prohibit the person who is subject to the order from purchasing, possessing, or transporting a firearm for the duration of the order." Id.  The order "may be issued for a specified period of time up to a maximum of 180 days." Id. § 19.2-152.14(C).  "Prior to the expiration of the order, an attorney for the Commonwealth or a law-enforcement officer may file a written motion requesting a hearing to extend the order." Id.  The court may extend the order for up to 180 days "if the court finds by clear and convincing evidence that the person continues to pose a substantial risk of personal injury to himself or to other individuals in the near future by such person's possession or acquisition of a firearm at the time the request for an extension is made." Id.  After at least 30 days have passed following the issuance of a substantial risk order, the person who is subject to the order may file a motion to dissolve the order. Id.

To enforce the provisions of a substantial risk order, the General Assembly created a new Class 1 misdemeanor:

> It is unlawful for any person who is subject to an emergency substantial risk order or a substantial risk order entered pursuant to § 19.2-152.13 or 19.2-152.14 or an order issued by a tribunal of another state, the United States or any of its territories, possessions, or commonwealths, or the District of Columbia pursuant to a statute that is substantially similar to § 19.2-152.13 or 19.2-152.14 to purchase, possess, or transport any firearm while the order is in effect. Any such person with a concealed handgun permit is prohibited from carrying any concealed firearm while the order is in effect and shall surrender his permit to the court entering the order pursuant to § 19.2-152.13 or 19.2-152.14. A violation of this section is a Class 1 misdemeanor.

Id. § 18.2-308.1:6.  The General Assembly also made it a Class 1 misdemeanor to "knowingly and willfully make[] any materially false statement or representation to a law-enforcement officer or attorney for the Commonwealth who is in the course of conducting an investigation undertaken pursuant to this chapter." Id. § 19.2-152.16.

## Background

Against this backdrop, the court turns to the facts alleged in the complaint, which are accepted as true for purposes of the pending motions.  See Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018) ("We accept the facts of the complaint as true as we would in context of a Rule 12(b)(6) challenge because defendants' motions to dismiss are facial challenges to standing that do not dispute the jurisdictional facts alleged in the complaint.").

Draego alleges that he has "frequently voiced opinions viewed as controversial by the Charlottesville community."  Compl. ¶ 9, ECF No. 1.  For instance, Draego "attended various protests advocating against the removal of a statute of General Robert E. Lee."  Id.  He "also spoke at a Charlottesville City Council meeting during the public comment period on June 20, 2016 opposing unchecked Muslim immigration."  Id.

Draego alleges that he has become "widely associated with such viewpoints" and that his viewpoints have caught the attention of "activists."  Id.  On one occasion, activists posted flyers identifying Draego as a "local Nazi" and claiming that he "spew[s] anti-Muslim hate speech," is "a close associate of Jason Kessler [the controversial organizer of the Charlottesville protests]," and is known to carry firearms.  Id. (internal quotation marks omitted) (alteration in original).  On another occasion, an activist described Draego in a Facebook comment as an "avowed Islamophobe" who carries firearms.  Id. (internal quotation marks omitted).

Draego has owned firearms for over 15 years.  Id. ¶ 6.  He also possesses a concealed handgun permit.  Id.  As a result of the new legislation summarized above, Draego alleges that he "plans to refrain from engaging in lawful expressive activity to avoid losing his ability to possess firearms."  Id. ¶ 17.  He is also "refraining from carrying a firearm" or "purchasing additional lawful firearms out of fear they will be confiscated."  Id. ¶ 22.

**Procedural History**

Draego commenced this action on July 2, 2020, the day after the substantial risk order legislation took effect.  In his first cause of action, Draego claims that Virginia Code Ann. §§ 19.2-152.13 through 19.2-152.17 are "constitutionally invalid as overbroad in violation of the First Amendment" because the provisions authorize consideration of "any relevant evidence" to determine whether a substantial risk order should be issued, which could "include a person's speech or expressive activity."  Id. ¶¶ 15, 18 (internal quotation marks omitted).  In his second cause of action, Draego claims that the same provisions "infringe upon [his] right to keep and bear arms under the Second Amendment" and that he "is both refraining from carrying a firearm as he is lawfully entitled to do and purchasing additional lawful firearms out of fear they will be confiscated."  Id. ¶¶ 22–23.  In his third cause of action, Draego claims that the statutory provisions "violate [his] due process rights under the Fourteenth Amendment" because they "allow the Commonwealth to consider any relevant evidence when imposing a substantial risk order."  Id. ¶¶ 22–23 (internal quotation marks omitted).[2]  In his fourth cause of action, Draego claims that Virginia Code § 19.2-152.13, the emergency provision, "violates the Sixth Amendment" because it allows the Commonwealth to confiscate an individual's firearms "without affording him the right to a trial, the right to confront witnesses against him, or the right to counsel."  Id. ¶¶ 25–26.  In his fifth and final cause of action, Draego claims that the same Code section violates the Seventh Amendment because it "allows the Commonwealth to confiscate [his] firearms without affording him the right to a trial by a jury of his peers."  Id. ¶

---

[2] The court notes that several paragraphs of the complaint are misnumbered because certain numbers are used more than once to identify different paragraphs.  For instance, on page 6, there are two paragraphs numbered as 22.  In citing to the complaint, the court has not renumbered the paragraphs.

29.   Draego seeks an order enjoining the defendants from seeking a substantial risk order or enforcing the challenged statutory provisions.

The defendants have separately moved dismiss the complaint on multiple grounds, including lack of standing.  Draego has filed a response in opposition to the motions, in which he reemphasizes the actions previously taken by community activists and requests a hearing.  See Pl.'s Br. Opp'n 2, ECF No. 17 ("As a result of speaking during the public comment session of Charlottesville City Council on June 20, 2016 opposing—not all Muslim immigration, but unchecked Muslim immigration, flyers around the city were posted calling me a 'local Nazi' who 'is best known for . . . spewing anti-Muslim hate speech, is a close associate of Jason Kessler' [I am not] and stating I am 'a known open and concealed firearm [carrier].'  Only by speaking to the Court directly can I fully express how it makes one feel[] to know that my family and friends see such flyers.") (first and second alteration in original).  Upon review of the complaint, the parties' arguments, and applicable caselaw, the court finds that a hearing is unnecessary to resolve the standing challenge raised by the defendants.  Accordingly, the matter is ripe for disposition.

### Standard of Review

Article III of the Constitution limits the jurisdiction of federal courts to certain "Cases" and "Controversies."   U.S. Const. art. III, § 2.   "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (internal quotation marks and citations omitted).  Thus, Article III standing is a "subject matter jurisdiction issue."  Beyond Sys., Inc. v. Kraft Foods, Inc., 777 F.3d 712, 715 (4th Cir. 2015).

The United States Court of Appeals for the Fourth Circuit has explained that defendants may challenge subject matter jurisdiction in one of two ways: "facially or factually." Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (citing Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). In this case, the defendants make a facial challenge, arguing that the complaint fails to allege facts upon which subject matter jurisdiction can be based. Id. In that scenario, "the plaintiff is 'afforded the same procedural protection as [he] would receive under a Rule 12(b)(6) consideration.'" Id. (quoting Kerns, 585 F.3d at 192). The facts alleged in the complaint are accepted as true, and the motion must be denied if the complaint alleges sufficient facts to invoke the court's subject matter jurisdiction. Id.

## Discussion

In order to possess standing to sue under Article III, "a plaintiff must sufficiently allege the three elements identified by the Supreme Court." Hutton v. Nat'l Bd. of Exam's in Optometry, Inc., 892 F.3d 613, 619 (4th Cir. 2018). "That is, a plaintiff must allege that they have: '(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Id. (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016)). For the following reasons, the court concludes that Draego has failed to allege facts sufficient to satisfy the injury-in-fact requirement. See Spokeo, 136 S. Ct. at 1547 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element.") (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)) (alteration in original).

"The injury-in-fact requirement ensures that plaintiffs have a 'personal stake in the outcome of the controversy.'" Kenny, 885 F.3d at 287 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). The Supreme Court has defined an injury in fact as "'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Spokeo</u>, 136 S. Ct. at 1548 (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  An allegation of future injury may satisfy this requirement "if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" <u>Susan B. Anthony List v. Driehaus</u>, 134 S. Ct. 2334, 2341 (2014) (quoting <u>Clapper</u>, 568 U.S. at 409, 414 n.5).  However, "[a]llegations of <u>possible</u> future injury are not sufficient," and injury that "relies on a highly attenuated chain of possibilities" does not qualify as "certainly impending."  <u>Clapper</u>, 568 U.S. at 409–10 (emphasis in original) (internal quotation marks and citations omitted).

Because Draego seeks injunctive relief, he "must establish an ongoing or future injury in fact." <u>Kenny</u>, 885 F.3d at 287 (citing <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495–96 (1974)).  This requirement is "somewhat relaxed in First Amendment cases."  <u>Cooksey v. Futrell</u>, 721 F.3d 226, 235 (4th Cir. 2013).  In such cases, the Fourth Circuit has recognized two ways in which a plaintiff may establish the requisite ongoing injury when seeking to enjoin the enforcement of a statute or government policy alleged to violate the First Amendment.  <u>Abbott v. Pastides</u>, 900 F.3d 160, 176 (4th Cir. 2018) (citing <u>Kenny</u>, 885 F.3d at 288).  First, plaintiffs may "allege an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  <u>Kenny</u>, 885 F.3d at 288 (internal quotation marks and citation omitted).  Second, plaintiffs "may refrain from exposing themselves to sanctions under the [statute or] policy, instead making a sufficient showing of self-censorship—establishing, that is, a chilling effect on their free expression that is objectively reasonable."  <u>Abbott</u>, 900 F.3d at 176 (internal quotation marks and citation omitted).  "Either way, a credible threat of enforcement is critical; without one, a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an

objectively good reason for refraining from speaking and 'self censoring' instead." Id. (citations omitted).

Upon review of the complaint, the court concludes that Draego's allegations fail to satisfy the ongoing or future injury-in-fact requirement for injunctive relief. Draego alleges that he "plans to refrain from engaging in lawful expressive activity to avoid losing his ability to possess firearms." Compl. ¶ 17; see also id. ¶ 17 ("Sections 19.2-152.13 to 19.2-152.17 have chilled Mr. Draego's speech . . . ."). However, nothing in the complaint suggests that Draego faces a credible threat of being subjected to a substantial risk order if he exercises his First Amendment rights.

Draego does not identify any particular form of expressive activity that he wishes to engage in, but is refraining from in fear of being subjected to a substantial risk order. To the extent that he is refraining from voicing his opinions on political or social issues, the substantial risk order legislation does not facially restrict such expressive activity. Instead, the legislation is directed to acts of violence, force, physical threats, or other conduct by an individual that evidences a substantial risk of personal injury to himself or others by such individual's possession of a firearm. See Va. Code Ann. §§ 19.2-152.13(A) and 19.2-152.14(A) (2020). Accordingly, this is not a case in which a credible threat of enforcement can be presumed. See Abbott, 900 F.3d at 178 n.9 ("We have recognized a 'presumption' of a credible threat of enforcement with respect to 'non-moribund' statutes that 'facially restrict[] expressive activity by the class to which the plaintiff belongs. The plaintiffs do not rely on that presumption here, and we agree that it does not apply.") (quoting N.C. Right to Life, Inc. v. Bartlett, 168 F.3d 705, 710 (4th Cir. 1999)) (alteration in original).

Nor is this a case in which the plaintiff cites to past enforcement against the same conduct to demonstrate a credible threat of future enforcement.  See id. ("The most obvious way to demonstrate a credible threat of enforcement in the future, of course, is an enforcement action in the past."); Driehaus, 134 S. Ct. at 2345 ("[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical.") (internal quotation marks and citation omitted).  For instance, in Kenny v. Wilson, a group of students sought to challenge two South Carolina laws criminalizing school disturbances and disorderly conduct.  885 F.3d at 284.  The Fourth Circuit "held that several of the students could show a 'credible threat of future enforcement' of the laws against them—primarily because they had previously been arrested and criminally charged under the very same statutes."  Abbott, 900 F.3d at 176 (quoting Kenny, 885 F.3d at 289).

Draego, by contrast, does not allege that the substantial risk order legislation has been utilized against him or anyone else because of the expressive activity in which he seeks to engage.  See Abbott, 900 F.3d at 176–79 (holding that the plaintiffs could not establish a credible threat that a policy would be enforced against them since they could point to no evidence of prior sanctions under the policy for the same type of speech).  Nor does he allege that the defendants or any other law enforcement officials have threatened to petition for a substantial risk order on the basis of his expressive activity.  See Rock for Life-UMBC v. Hrabowski, 411 F. App'x 541, 548 (4th Cir. 2010) (holding that the plaintiffs failed to demonstrate a credible threat of enforcement under the university's sexual harassment policy and emphasizing that the plaintiffs did "not allege facts suggesting that [the university] ever threatened to punish their speech as sexual harassment").  At most, Draego suggests that he has self-censored his speech on the basis of past actions taken by non-party "activists."  However, the new legislation does not permit

members of the general public to petition for a substantial risk order, and his allegations in this regard do not "translate into a credible threat that the [defendants] would sanction [him] for engaging in protected speech in the future simply because others found it offensive."  Abbott, 900 F.3d at 177; see also Plunderbund Media, LLC v. DeWine, 753 F. App'x  362, 371 (6th Cir. 2018) (emphasizing that the challenged statutes could not be enforced by private citizens and that "[a]lleging a risk of false prosecution fails to establish standing when plaintiffs' unsupported allegations are 'simply too . . . highly conjectural to present a threat of immediate injury, as the allegations rest[] on a string of actions the occurrence of which is merely speculative'") (quoting White v. United States, 601 F.3d 545, 554 (6th Cir. 2010)) (second and third alteration in original).

In short, while Draego alleges that the enactment of the challenged statutes has chilled him from exercising his constitutional rights, he has not alleged facts sufficient to show that any threat of the defendants enforcing the statutes against him is more than a speculative or conjectural possibility.  Without a credible threat of enforcement sufficient to establish an injury-in-fact, Draego lacks standing to challenge the constitutionality of the legislation.  See Md. Shall Issue, Inc. v. Hogan, 963 F.3d 356 (4th Cir. 2020) ("A credible threat of prosecution exists only if it 'is not imaginary or wholly speculative,' chimerical, or wholly conjectural.'") (quoting Kenny, 885 F.3d at 288); Benham v. City of Charlotte, 635 F.3d 129, 135 (4th Cir. 2011) ("[S]ubjective or speculative accounts of . . . a chilling effect . . . are not sufficient" to demonstrate an injury in fact.) (internal quotation marks and citation omitted) (first alteration in original).

**<u>Conclusion</u>**

For the reasons stated, the court will grant the motions to dismiss filed by the defendants.[3]   The complaint will be dismissed without prejudice for lack of standing.   <u>See</u> <u>Buscemi v. Bell</u>, 964 F.3d 252, 261 (4th Cir. 2020) (explaining that dismissal for lack of standing "requires that a complaint be dismissed without prejudice").   A dismissal without prejudice does not prevent the plaintiff from refiling his claims, provided that he is able to allege facts sufficient to establish standing under Article III.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This __13th__ day of November, 2020.

_____
                Senior United States District Judge

---

[3] In light of the court's conclusion that that the complaint is subject to dismissal for lack of standing, the court need not address the alternative arguments raised in the defendants' motions to dismiss.